**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS\
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 10 CR 1063 |
| | ) | |
| CHRISTIAN GONZALEZ | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Christian Gonzalez was charged with conspiracy to possess marijuana with intent to distribute, as well as possession of marijuana with intent to distribute. The charges involved an extraordinarily large quantity of marijuana, over 1000 kilograms. It was shipped to Chicago from Mexico in railroad cars. The railroad cars contained large "supersacks" that were filled with pigment for use with masonry and cement. The marijuana was compressed into smaller bales that were concealed within the pigment.

The railroad cars arrived in the Chicago area in early December 2010 and were taken to a warehouse. The supersacks were unloaded from the railroad cars and placed inside the warehouse. Once inside, a number of the sacks were emptied, with their contents run through a sifter. A number of the bales of marijuana were set aside during this process.

Law enforcement learned of the marijuana shipment before it came to Chicago and monitored its transportation to this area. Surveillance cameras were placed both inside and outside the warehouse, and law enforcement agents conducted physical

surveillance. Wiretaps were also used to record conversations among the alleged participants.

Some of those charged are fugitives. Of those arrested, the higher-up participants pled guilty. Three lower-level participants, Gonzalez, Javier Vera, and Miguel Cordova, pled not guilty and went to trial. The evidence showed, without much dispute, that each of them was involved in handling and emptying the contents of several of the supersacks. The key disputed issue involved these defendants' knowledge that the supersacks contained a controlled substance.

A jury acquitted Gonzalez, Vera, and Cordova of possession with intent to distribute but convicted them of conspiracy. Gonzalez faces a ten year mandatory minimum prison sentence due to the quantity of marijuana proven to have been involved.

**Gonzalez's motion**

Gonzalez has moved for entry of a judgment of acquittal or for a new trial. In support of granting a new trial, he argues that the Court erred in giving the jury an "ostrich" instruction and in admitting against him statements by co-conspirators that predated December 10, 2010, on the ground that there was no basis to find that he joined any conspiracy prior to that date. In support of entry of a judgment of acquittal, Gonzalez argues that there was insufficient evidence to permit a jury to find that he agreed to assist in extracting the marijuana bales from the supersacks or that he knew marijuana was contained in the supersacks.

**Discussion**

1. **Motion for new trial**

Gonzalez is not entitled to a new trial. A so-called "ostrich" instruction is

inappropriate when the government's evidence leaves the jury with a "binary choice," specifically, that the defendant either had actual knowledge or lacked knowledge. *See United States v. Craig*, 178 F.3d 891, 898 (7th Cir. 1999); *United States v. Giovanetti*, 919 F.2d 1223, 1228 (7th Cir. 1990). *See also United States v. Caliendo*, 910 F.2d 429, 435 (7th Cir. 1990) ("If the evidence against the defendant points solely to direct knowledge of the criminal venture, it would be error to give the [ostrich] instruction.") (internal quotation marks and citation omitted). But that was not case here. The government offered evidence, in particular Gonzalez's post-arrest statement to law enforcement, in which he denied actual knowledge that he was handling narcotics but admitted that he suspected narcotics were involved. Though Gonzalez contended that he did not deliberately avoid the truth, there was sufficient evidence to warrant giving a deliberate-avoidance instruction.

Second, assuming as Gonzalez argues that there was insufficient evidence of his participation in a conspiracy prior to December 10, 2010, that did not preclude admission of co-conspirator declarations by others that predated his joinder. *See, e.g., United States v. Handlin*, 364 F.3d 584, 590 (7th Cir. 2004); *United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir. 1990).

For these reasons, Gonzalez is not entitled to a new trial.

**2.    Motion for judgment of acquittal**

In reviewing the sufficiency of the evidence, the Court views the evidence in the light most favorable to the prosecution and draws reasonable inferences in the prosecution's favor. *See, e.g., United States v. Mota*, 685 F.3d 644, 650 (7th Cir. 2012). The Court must uphold the conviction "so long as any rational trier of fact could have

3

found the defendant to have committed the essential elements of the crime." *Id.*

As indicated earlier, Gonzalez was charged with conspiracy to possess a controlled substance with intent to distribute. The government was therefore required to prove that (1) there was such a conspiracy and (2) Gonzalez knowingly became a member of the conspiracy, intending to advance it. *See, e.g., United States v. Jones*, 600 F.3d 847, 855 (7th Cir. 2010). The dispute involves the second of these elements.

The government argues that the evidence permitted a reasonable jury to find that Gonzalez knew (either directly or via deliberate avoidance) that narcotics were inside the supersacks and thus knowingly helped to carry out the conspiracy by helping unload the supersacks. It argues that the evidence supporting the jury's finding that Gonzalez knowingly joined the conspiracy consists of: an alleged "secret meeting" at a department store on December 11, 2010 between Gonzalez and others and "the local boss of the narcotics operation," together with "counter-surveillance" conducted by others during the meeting; Gonzalez's alleged conduct of counter-surveillance at the warehouse; his involvement in putting together cardboard boxes that the government contends were to be used to store and transport the marijuana; and his work on machines that were used to facilitate the removal of the marijuana. *See* Govt. Resp. to Mot. for Acquittal at 3-4. The government also argues that Gonzalez's statement to law enforcement after his arrest shows that he knew narcotics were inside the supersacks. *Id.* at 4-5. Finally, the government argues that the evidence showed that Gonzalez was present inside the warehouse for an extended period while eight bricks of marijuana, later found sitting on the warehouse floor, were removed from a supersack (or sacks) that contained red pigment and that he was arrested just outside the warehouse

covered in that same pigment shortly thereafter, thus suggesting that he had helped unload the bricks. *Id.* at 5.

A defendant is considered to have knowledge of a matter particular fact "if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident." Seventh Cir. Crim. Jury Instructions 4.10 (2013); *see United States v. Graham*, 431 F.3d 585, 590 (7th Cir. 2005). Even if the defendant lacks direct knowledge, the government may establish knowledge on an "ostrich" / deliberate-avoidance theory when the evidence shows that he "deliberately avoided learning the truth." *United States v. Carani*, 492 F.3d 867, 873 (7th Cir. 2007). Deliberate avoidance requires more than mere negligence; the defendant "must have 'deliberately avoided acquiring knowledge of the crime being committed by cutting off his curiosity through an effort of the will.'" *Carani*, 492 F.3d at 873 (quoting *United States v. Leahy*, 464 F.3d 773, 796 (7th Cir. 2006). "The purpose of the ostrich instruction is to inform the jury that a person may not escape criminal liability by pleading ignorance if he knows or strongly suspects he is involved in criminal dealings but deliberately avoids learning more exact information about the nature or extent of those dealings." *United States v. Carrillo*, 435 F.3d 767, 780 (7th Cir. 2006) (internal quotation marks and citation omitted).

According to the Seventh Circuit, no physical or outward indication of deliberate avoidance is required; "[t]he circumstances . .. may be sufficient to infer that, given what the defendant knew, he must have forced his suspicions aside and deliberately avoided confirming for himself that he was engaged in criminal activity." *Carani*, 492 F.3d at 873. The Supreme Court arguably has applied a more stringent standard, stating that

5

willful blindness includes "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011). The requirement of proving "deliberate actions" to avoid knowledge, *id.*, is arguably more stringent than the requirement of proving "deliberate avoid[ance] . . . through an effort of the will." *Carani*, 492 F.3d at 873.

The Court has, of course, considered the evidence as a whole, but out of necessity it addresses each item of evidence separately.

Gonzalez's use of the sifting machine and his other work unloading and emptying the supersacks does not, without more, point to knowledge (either direct or otherwise) that the sacks that they contained a controlled substance. It is undisputed that colored pigment was the primary contents of the supersacks, and there is no evidence that each and every one of the sacks contained compressed marijuana bricks.

Gonzalez's assistance in putting together cardboard boxes likewise is not indicative of direct knowledge. This was certainly evidence that he was aware that something from the supersacks was going to be boxed up and carried away, but not that this consisted of a controlled substance. That said, Gonzalez himself cited this as a factor that made him suspicious, a point that the Court will consider shortly. *See* Govt. Ex. Gonzalez Tr. 27.

The government's characterization of the department store meeting as "secret" and its claim that Gonzalez and others were involved in counter-surveillance at the meeting or at the warehouse is a stretch, beyond the bounds of reasonable inference. The meeting occurred in a public space, and the reasonable interpretation of the so-

6

called "countersurveillance" was that those involved, including Gonzalez at the warehouse, were taking cigarette breaks or an ordinary break from working. There was no indication at all, from the video evidence or otherwise, that they were looking out for other people.[1]

The government's more significant evidence relating to Gonzalez's knowledge consists of his involvement in handling, or at least seeing, several marijuana bricks and his very lengthy recorded interview with law enforcement on December 15, 2010. The transcript of the interview is over seventy-five single-spaced pages. During the interview, Gonzalez repeatedly and unequivocally admitted that he *suspected* that the sacks contained controlled substances in addition to the pigment. *See* Govt. Ex. Gonzalez Tr. at 24, 27, 29 & 62. But under *Carrillo* and *Global Tech*, suspicion alone does not amount to knowledge. As indicated earlier, *Carrillo* says that the government must prove that the defendant "deliberately avoided" learning the truth "by cutting off his curiosity through an effort of the will," *Carrillo*, 492 F.3d at 873 ; *Global Tech* says that there must be proof that the defendant "[took] deliberate actions to avoid learning" the truth. *Global-Tech*, 131 S. Ct. at 2070.

On the issue of deliberate avoidance, the government's evidence is far weaker. First, during his statement to law enforcement, Gonzalez repeatedly denied knowing, or being told, that there were drugs in the sacks. Govt. Ex. Gonzalez Tr. at 24, 28, 30, 35, 56 & 66. He also stated, several times, that had he known or been told that narcotics or

---

[1] There was a recorded telephone conversation on December 10, 2010 in which Gonzalez reported to Carlos Quintero, the person who had hired him, that a man whom those at the warehouse did not know had come to the warehouse, looked at the supersacks, and asked questions. These conversations and their surrounding context do not suggest countersurveillance or guilty knowledge on Gonzalez's part. It is neither surprising nor suspicious that Gonzalez would report to his boss that a stranger had come onto the worksite.

anything criminal was involved, he would not have participated. *Id.* at 32, 34 & 60.

More to the point, however, Gonzalez repeatedly indicated in his statement that he did not put his head in the sand (to stick with the ostrich metaphor). Rather, he said, he made inquiries about the contents of the supersacks to a person whom he referred as the "old man" and to Carlos Quintero. *Id.* at 24, 27, 35, 61 & 62. This is the opposite of deliberate avoidance of knowledge; Gonzalez said that he actually tried to find out, more than once, what he was dealing with. Gonzalez told the authorities that Quintero told him the material was used for cement, concrete, or marble, *id.* at 27, and that later, when Gonzalez asked directly about whether drugs were involved, Quintero said he did not know. *Id.* at 61. Gonzalez also said that when he asked the "old man" – on the day of the arrest – what was in the bags, the man replied that "it's just some stuff" and otherwise ignored Gonzalez's questions. *Id.* at 35. A jury, of course, was not required to accept the veracity of Gonzalez's statements in this regard. But the government bore the burden of proving Gonzalez's knowledge, directly or via deliberate ignorance. Gonzalez's statement to the authorities is not reasonably interpreted as showing "deliberate avoid[ance]" of knowledge "by cutting off his curiosity through an effort of the will," let alone "deliberate actions to avoid learning" the truth.

The government also points to the fact that Gonzalez saw, and possibly handled, several of the bricks of compressed marijuana. The evidence, taken in the light most favorable to the government, certainly established that he handled or saw several of the bricks. But we are not talking here about something that, in the state in which Gonzalez observed them, was readily recognizable as marijuana or some other controlled substance. *See, e.g.,* Govt. Exs. Eagle Pass Photo 4, Processing Photo 1, Processing

8

Photo 11.  Nor did the government present any evidence that would have permitted a reasonable jury to find that it would have been apparent to anyone, or to someone in Gonzalez's position, that the bricks were compressed marijuana.  Gonzalez indicated in his statement to law enforcement that he suspected this, *see* Govt. Ex. Gonzalez Tr. 62, but suspicion alone does not add up to knowledge under the law; as the Court has described, deliberate avoidance of the truth is also required.

The Court again acknowledges, as it did earlier, that it is required to view the evidence as a whole, and not as a bunch of component parts.  Taking the evidence as a whole, however, the government failed to prove actual knowledge; this was, at most, a deliberate-avoidance case.  In that regard, the evidence showed that Gonzalez had suspicions that he was dealing with narcotics, but it also showed that he tried to find out what he was dealing with.  He may not have found out the truth, but he did not avoid trying to find out.

Ultimately, in the Court's view, the issue boils down to the following.  Gonzalez was suspicious of illegal activity; the evidence introduced by the government reflected that he inquired of those who would know; that same evidence reflected that Gonzalez's suspicions were refuted to some extent and certainly were not confirmed; and he proceeded ahead.  Is that sufficient to permit a reasonable jury to find the requisite knowledge?  Given the requirement to prove deliberate avoidance of the truth, the Court believes that the answer to this question is no, though the question is a close one given the standard that applies on a motion for acquittal.  It was, without question, quite unwise, as well as negligent, for Gonzalez to remain involved despite his suspicions.  But lack of wisdom and negligence do not amount to knowledge.  No reasonable jury

9

could have found evidence sufficient to support a finding of deliberate avoidance as the law defines that term.

      In sum, the Court concludes that even if one views the record in the light most favorable to the government, no reasonable jury could have found that Gonzalez had the requisite knowledge. The Court therefore grants Gonzalez's motion for a judgment of acquittal as to Count 1, the conspiracy charge. Because the jury acquitted Gonzalez on Count 2, the Court directs the Clerk to enter a judgment acquitting Gonzalez on all charges against him.

                                                                  _____  
                                                            MATTHEW F. KENNELLY  
                                                            United States District Judge

Date: March 25, 2013